O

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

LAREDO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| VS. | * | CRIMINAL NO. L-09-596 |
| EDUARDO SOLIS | * | |

<u>MEMORANDUM AND ORDER</u>

Defendant's Motion to Suppress (Docket No. 21) was heard on June 8, 2009.  While the evidence did not quite reach the level of much ado about nothing, it came close.  Defendant seeks to suppress all statements made by him "at or subsequent to his arrest on April 2, 2009."  The Government vigorously opposes the motion.  Yet, both sides agree that Defendant actually said very little.  His "statements" consisted of an acknowledgement that he appears in a certain photograph and that, on the occasion of the alleged criminal activity in 2007, he was too "high" to remember what he might have been doing.  Finally, he said something to the effect that he would be willing to "talk" if he were "let go."

<u>Factual Background</u>

The arrest of the Defendant in April of 2009 was serendipitous.  A task force consisting of deputy marshals and deputy sheriffs was attempting to execute a State warrant on one Joe Willie Ramos.  They had information that he might be located at a certain apartment complex.  The officers approached the complex,

and as they began surveillance, a blue sedan arrived. Two men exited the vehicle and approached the target apartment, one going toward the front door and one to the rear area. The officers knew from a prior photograph that neither of those two men were Joe Willie Ramos. However, they were unable to see the face of the driver. As some of the officers approached the apartment, the two men ran back to the blue sedan, which then quickly drove off. One of the officers called for the vehicle to stop, but to no avail. A short chase ensued.

A few blocks later, the sedan stopped in front of a residence. Deputy Marshal Sanchez then asked all three men for identification. Defendant had none, but Sanchez recognized him from an earlier encounter in a federal case. Sanchez called the Laredo Police Department for assistance. When LPD officers arrived, they checked their database to determine if any of the detainees were wanted. A deputy sheriff also checked the names on his database. Eventually, it was determined that the Defendant had a pending arrest warrant issued in the instant case. Sanchez then called DEA, and Agent Humberto Lopez arrived within an hour. Lopez took the Defendant into custody and drove him to DEA Headquarters on Shiloh Drive.

While waiting for Lopez, neither Deputy Marshal Sanchez nor the other officers asked any questions of the Defendant. In fact, Sanchez instructed the three men to remain silent and not even talk

with each other.

At the DEA Headquarters, Agent Lopez and Task Force Officer Joe Hernandez interviewed this Defendant.  They first read him his <u>Miranda</u> rights, and the interview lasted approximately thirty minutes.  Defendant testified that he asked for an attorney at the beginning of the interview and again shortly before the end of the interview, and that his requests were denied.  This conflicts with the testimony of Agent Lopez that Defendant waived his right to an attorney and never asked for one.  The Court finds Lopez' testimony more credible on this point.

There is no dispute, however, about an incident that occurred back at the scene of the original stop.  The blue sedan had stopped in front of the residence of Pablo Lopez, one of the three men in the vehicle.  A group of people had begun to gather in front of that residence as the three persons were being detained, waiting to be removed.  Defendant asserts that he knew at least several of the onlookers, including the mother of Pablo Lopez and the mother of the third occupant of the sedan, Chris Mondragon.  As Defendant was being  escorted away by Agent Lopez, he turned to the crowd of onlookers and called out words to the effect of "call my attorney." Defendant did not identify any attorney but says he meant local attorney Guillermo Garcia, who has represented him in previous cases.  Defendant opined that at least some of the onlookers, especially his friend, Mondragon, who was no longer being detained,

3

also would know that he meant Garcia.  There is no evidence that anyone actually called Garcia or that Garcia made any effort to find or locate the Defendant.  Indeed, when Defendant was subsequently brought before the federal magistrate for initial appearance, attorney Garcia was not with him, and the record reflects that Defendant instead requested appointment of counsel.

## Legal Analysis

The legal issue debated by the parties is whether Defendant's cry, "call my attorney," addressed to no one in particular and at a time when Defendant was not being interviewed, was sufficient to bar any further attempt to interview the Defendant.

In Miranda v. Arizona, 86 S.Ct. 1602 (1966), the Supreme Court held that in order to protect a suspect's Fifth Amendment right against self-incrimination, a suspect must be warned prior to custodial interrogation of his right to remain silent and to have an attorney present.  Only if there is a voluntary, knowing, and intelligent waiver of these rights can police question the suspect without counsel present.  In Edwards v. Arizona, 101 S.Ct. 1880, 1885 (1981), the Court held that once a suspect invokes the right to counsel, there can be no further police-initiated interrogation until either counsel is made available or a suspect initiates further communication himself.

This Court concludes, however, that Defendant did not properly invoke the Miranda-Edwards protections.  In McNeil v. Wisconsin,

4

111 S.Ct. 2204, 2211 n.3 (1991), the Supreme Court noted that it had never held "that a person can invoke his Miranda rights anticipatorily, in a context other than 'custodial interrogation.'" Several circuits have used the above language to conclude that a suspect must invoke his Miranda right to counsel at the time of custodial interrogation. See U.S. v. Grimes, 142 F.3d 1342, 1345, 1348 (11th Cir. 1998) (finding a form filled out by suspects asserting their Sixth Amendment right to counsel and right to remain silent insufficient to invoke the Miranda right to counsel as it was executed prior to actual or imminent custodial interrogation); U.S. v. LaGrone, 43 F.3d 332, 337, 340 (7th Cir. 1994) (suspect's request to call an attorney when asked for consent to search his store did not prevent police from later questioning subject in custody because suspect's request for attorney applied to search, not interrogation). See also United States v. Thompson, 35 F.3d 100, 104 (2d Cir. 1994); Alston v. Redman, 34 F.3d 1237, 1249 (3d Cir. 1994); U.S. v. Wright, 962 F.2d 953, 955-56 (9th Cir. 1992).

The Fifth Circuit has twice indicated strong support for the proposition that invocation of an attorney must be in the context of custodial interrogation before Miranda-Edwards applies. In United States v. Garcia Abrego, 141 F.3d 142, 168 (5th Cir. 1998), the defendant, who was arrested in Mexico and later turned over to U.S. custody, argued that his request for counsel at the airport

5

awaiting his flight to the United States invoked his Miranda right to counsel, and that his later custodial statement in U.S. custody was presumptively involuntary. While concluding that this issue had not been preserved for appeal, the court found it "highly questionable [that the defendant] could have invoked his Fifth Amendment right to counsel at a point in time prior to custodial interrogation." Id. In Goodwin v. Johnson, 132 F.3d 162, (5th Cir. 1997) (Goodwin I), the defendant argued that his request before an Iowa magistrate for the appointment of counsel invoked his Miranda right to counsel in a subsequent interview by Texas law enforcement. Id. at 179-80. The court called this argument "questionable" because he was not the subject of custodial interrogation at the hearing. Id. at 180. However, the court remanded for determination whether defendant had invoked his Miranda right to counsel by refusing to sign a waiver of rights form when first arrested by Iowa authorities. Id. at 180-81, 192.

On remand, the trial court concluded the defendant did not properly invoke his right to counsel, and the defendant again appealed. On a second appeal, Goodwin v. Johnson, 224 F.3d 450 (5th Cir. 2000) (Goodwin II), the court concluded that the refusal to sign a waiver-of-rights form did not constitute proper invocation of his Miranda right to counsel. Id. at 456-57. According to the court, in order for the defendant's subsequent confessions to be inadmissible, he must have affirmatively

6

Case 5:09-cr-00596   Document 28   Filed in TXSD on 06/19/09   Page 7 of 8

indicated to Iowa police officers that he did not want to answer their questions without an attorney present.  Id. at 456.  What is needed, "at a minimum," is "some statement that can reasonably be construed as an expression of a desire for the assistance of an attorney *in dealing with custodial interrogation by the police*." Id. (quoting Edwards, 451 U.S. at 484, 101 S.Ct. 1880) (emphasis added in McNeil).  This holding is consistent with other cases considering the type of request necessary to invoke the Miranda right.  U.S. v. Davis, 512 U.S. 452, 114 S.Ct.2350 (1994) (the statement "Maybe I should talk to a lawyer" is insufficient, noting that "a statement either is such an assertion of the right to counsel or it is not"); Soffar v. Cockrell, 300 F.3d 588 (5th Cir. 2002) (a suspect's questions asking whether he should get an attorney, how he could get one, and how long it would take to have one "did not rise to the level of an unambiguous invocation of his right to counsel").

In the instant case, the Court concludes that Defendant Solis's cry of "call my attorney" is not an unambiguous expression of a desire for the assistance of counsel nor was it made in connection with a custodial interrogation.

For the foregoing reasons, the Motion to Suppress (Docket No. 21) is DENIED.

7

**DONE at Laredo, Texas, this 19th day of June, 2009.**

                                                                       _____
                                                                       **Senior United States District Judge**